**UTE INDIAN TRIBE OF the UINTAH AND OURAY RESERVATION, UTAH, Plaintiff,**

v.

**Secretary of the Interior Donald HODEL, et al., Defendants.**

Civ. A. No. 86–2444.

United States District Court, District of Columbia.

Nov. 16, 1987.

Stephen G. Boyden, Salt Lake City, Utah, Martin E. Seneca, Washington, D.C., for plaintiff.

Joseph S. Davies, U.S. Dept. of Justice, Land and Nat. Resources Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

In the above-captioned case, plaintiffs, full-blood members of the Ute Indian Tribe of the Uintah and Ouray Reservation, Utah (the "Tribe") seek declaratory relief against the Secretary of the Interior (the "Secretary"). Specifically, the Tribe seeks declaratory judgment that the Secretary's discretion to approve or disapprove per capita payments from judgment funds contained in Docket Number 327 is narrowly circumscribed such that the Secretary merely performs a ministerial function. The case presently is before the Court on defendants' motion for summary judgment. In consideration of defendants' motion, the opposition thereto, oral argument, and the entire record of the case, the Court shall grant defendants' motion for summary judgment.

### Background

This case arises from judgment funds awarded to the Tribe in consolidated claims against the United States for the taking of lands. *See Confederated Banks of the Ute Indians v. United States,* 14 Ind.Cl.Comm. 679 (1965). Congress appropriated the funds to pay the judgment in the Second Supplemental Appropriations Act of 1965. Pub.L. 89–16, Title IV, 79 Stat. 108.[1] The

judgment encompassed three tribes which were referred to as the Consolidated Bands of the Ute Indians.[2] In 1967, Congress statutorily divided the judgment amongst the three tribes. 25 U.S.C. § 676a (1982).[3] Congress stated that the judgment funds

> shall be available for advance to [the Tribe], or for expenditure, for such purposes, including per capita payments, as may be designated by the Tribal Business Committee for the full-blood members, and by the authorized agents of the mixed-blood members, and in either event subject to the approval of the Secretary ... after [the termination of federal supervision of the mixed-blood group] per capita payments to the mixed-blood group shall not be subject to the approval of the Secretary.

25 U.S.C. § 677j (1982).[4]

The Tribal Business Committee submitted resolutions on June 9 and 10, 1986 to the Phoenix Area Office of the Bureau of Indian Affairs requesting approval of a $5,000 per capita distribution from the judgment fund to each member of the Tribe. This would amount to approximately a $9 million payment. The Area Director denied the request, stating that such a distribution would result in a dangerously low balance in the Tribal trust account. The Area Director maintained that the long-range interests of the Tribe mandated denial of the distribution. On appeal to the Assistant Secretary for Indian Affairs, the Area Director's decision was upheld. Specifically, the Assistant Secretary rejected

---

1. The Second Supplemental Appropriations Act appropriated approximately $31.4 million to pay various judgments against the United States. The Tribe's judgment fund represents one of those judgments.

2. Beside the Tribe presently before the Court, the judgment covered the Southern Utes of the Southern Ute Reservation and the Ute Mountain Tribe of the Ute Mountain Reservation.

3. In pertinent part, the statute provides

   The Secretary of the Interior is hereby authorized to divide the trust fund belonging to the Confederated Bands of the Ute Indians ... by crediting 60 per centum to the Ute Indian Tribe of the Uintah and Ouray Reservation ... [which] shall be available for use in ac-

cordance with existing authorization for use of funds of the tribes ... [including, *inter alia,* 25 U.S.C. § 677j].
   25 U.S.C. § 676a (1982).

4. Formerly separate legislation was necessary to distribute judgment funds. Beginning in 1973, however, Congress enacted a uniform procedure for distributing Indian judgment funds. 25 U.S.C. §§ 1401–1407 (1982). Section 677j differentiates between the Tribe's mixed-blood members, who are no longer under federal supervision, and the Tribe's full blood members, who still are subject to federal supervision. Plaintiffs' counsel during oral argument represented that the mixed bloods have received per capita payments from the judgment fund. According to counsel, the full bloods, however, opted to refrain from spending the funds.

the Tribe's contention that the Secretary's review of the tribal resolutions was ministerial and not discretionary under 25 U.S.C. § 677j.[5] The Tribe appealed the Secretary's determination to this Court. The sole issue before the Court is whether the statute authorizes the Secretary to exercise the traditional duties and powers of a trustee such that the Secretary can refuse a distribution of per capita payments.

## DISCUSSION

■ The judgment fund is a trust fund on its face. 25 U.S.C. § 676a. As such, a fiduciary relationship exists between the Tribe and the United States government unless Congress provides otherwise. *Moose v. United States*, 674 F.2d 1277, 1281 (9th Cir.1982) (citing *Navajo Tribe v. United States*, 624 F.2d 981, 987, 224 Ct.Cl. 171 (1980)). As trustee of a trust fund, the United States government undertakes a duty to maximize the trust income. *Cheyenne–Arapaho Tribes of Oklahoma v. United States*, 512 F.2d 1390, 1394, 206 Ct.Cl. 340 (1975). "Unless it appeared affirmatively that Congress meant to create something less than a trust relationship when it used the term 'trust' in referring to a particular fund, we would necessarily assume that Congress intended to establish nothing less than a valid trust—complete with fiduciary duties and concomitant financial liability for their breach." *Whiskers v. United States*, 600 F.2d 1332, 1335 (10th Cir.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980).

Plaintiffs maintain that Congress did alter the trustee duties by including the directive that the "tribal funds ... *shall* be available ... [for] per capita payments ... subject to the approval of the Secretary." 25 U.S.C. § 677j (1932). The Tribe asserts that the use of the word "shall" mandates

that the Secretary must approve all resolutions for per capita payments.

■ Traditionally the use of the word "shall" indicates a mandatory nondiscretionary duty. *Planned Parenthood Federation of America, Inc. v. Heckler*, 712 F.2d 650, 656 (D.C.Cir.1983). A court, however, may always investigate beyond "ritualistic incantation" of this standard rule. *See id.* at 657 n. 32; *FBI v. Abramson*, 456 U.S. 615, 625 n. 7, 102 S.Ct. 2054, 2061 n. 7, 72 L.Ed.2d 376 (1982) (despite "plain meaning" rule, court's duty is to find interpretation most harmonious with statutory scheme and general purposes that Congress manifested). In the present case, the only legislative history to which the plaintiff directs the Court's attention for assistance in interpreting the degree of discretion is the report by the Senate Committee on Interior and Insular Affairs in which the Committee changed the language from "may be expended or advanced by the respective groups" to the final version of "shall be available for advance." S.Rep. No. 1632, 83d Cong., 2d Sess. 3 (1954). The legislative history is silent on the reasons for the alteration of the language.[6] The legislative history of section 677j, however, does indicate a congressional intent that the full-blood members of the Tribe remain under federal supervision. *See* H.Rep. No. 2493, 83d Cong., 2d Sess. 2 (1954), U.S.Code Cong. & Admin.News p. 3355. "[T]he majority of the mixed-blood group feel that they are ready for a termination of Federal supervision over their property and the full-blooded Indians believe that they are not ready for such action." *Id.*, U.S.Code Cong. & Admin.News p. 3356. Furthermore, the judgment funds, by statute, are trust funds. 25 U.S.C. § 676a (1982). As discussed, the government, as trustee, is

---

**5.** The Tribe maintains that the Secretary must approve the distribution if (1) the money is in the account and available for distribution; (2) the tribal regulations governing resolutions were followed; and (3) the legislative authority exists for a per capita payment.

**6.** The Court is not unmindful of plaintiffs' counsel's representations during oral argument in which counsel explained that the standard language in these types of distribution statutes is

"may" and that the Tribe specifically requested the "shall" language. The Court, however, is constrained by the matters as they appear in the official record. Thus, in the Court's view, there is no explanation of the change from "may" to "shall." If the Tribe desires to have the language altered to what the plaintiffs maintain is the original intent, the Tribe must do so legislatively.

subject to a stringent fiduciary duty. This duty overcomes the "shall" language.[7] Finally, the trust relationship that exists between the United States and the Tribe is representative of any number of trust relationships between the United States and Indian tribes. Given the overall framework of these trust relationships, the legislative history of the statutes, and the nature of the judgment fund as a trust fund, the Secretary is empowered to exercise discretion when deciding whether to approve per capita payments from the judgment fund. For the foregoing reasons, the defendants' motion is granted pursuant to the order accompanying this memorandum.

---

7. Despite the use of "shall" the overall background of the statute indicates a nonmandatory interpretation of "shall" is proper. In fact, one could read the shall as not directed towards the Secretary's actions. Specifically, the statute could be interpreted as requiring that the judgment funds be available, i.e., exist in the accounts, for expenditures, among them per capita payments, which will only be made if the Secretary approves them.